Slip Op. 19-25

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HUBBELL POWER SYSTEMS, INC.** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant, <br><br> and <br><br> **VULCAN THREADED PRODUCTS INC.** <br><br> Defendant-Intervenor | Before: Jane A. Restani, Judge <br><br> Court No. 15-00312 <br><br> PUBLIC VERSION |

**OPINION AND ORDER**

[Antidumping duty determination remanded for Commerce to reevaluate application for rate separate from China-wide entity rate]

Dated: February 27, 2019

    Kevin M. O'Brien, and Christine M. Streatfeild, Baker & McKenzie LLP, of Washington, DC, for the plaintiff Hubbell Power Systems, Inc.

    Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of Counsel on the brief was Khalil N. Gharbieh, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

    Roger B. Schagrin, Christopher T. Cloutier, and Paul W. Jameson, Schagrin Associates Washington, DC, for the defendant-intervenor Vulcan Threaded Products Inc.

    Restani, Judge: This matter concerns the Department of Commerce's ("Commerce") final results of the fifth administrative review of the antidumping ("AD") duty order on certain steel

threaded rod from the People's Republic of China ("PRC"). <u>Certain Steel Threaded Rod from the People's Republic of China; Final Results of 2013–2014 Antidumping Duty Administrative Review</u>, 80 Fed. Reg. 69,938 (Dep't Commerce Nov. 12, 2015) ("Final Results"). Hubbell Power Systems, Inc ("Hubbell"), a U.S. importer of Chinese exporter Gem-Year Industrial Co. Ltd. ("Gem-Year") products, challenges Commerce's rejection of Gem-Year's application for separate rate status and assignment of the 206% PRC-wide rate to Gem-Year. Pl.'s Brief in Supp. of Mot. for J. on the Agency R. Pursuant to Rule 56.2, Doc. No. 33 ("Hubbell Br."). For the reasons stated below, the matter is remanded for Commerce to reconsider Gem-Year's separate rate application and, if it determines that Gem-Year is entitled to a separate rate, to determine that rate.

## BACKGROUND

In 2009, Commerce issued an AD duty order on certain steel threaded rod from the PRC. <u>Certain Steel Threaded Rod from the People's Republic of China: Notice of Antidumping Duty Order</u>, 74 Fed. Reg. 17,154 (Dep't Commerce Apr. 14, 2009). In response to requests by interested parties, Commerce initiated its fifth administrative review of the order for the period of review ("POR") April 1, 2013 to March 31, 2014. See <u>Initiation of Antidumping and Countervailing Duty Administrative Review</u>, 79 Fed. Reg. 30,809 (Dep't Commerce May 29, 2014) ("Initiation Notice"). Commerce selected exporter Gem-Year as one of two mandatory respondents for the review. See <u>Issues & Decision Mem. for the Final Results of the Fifth Administrative Review of the Antidumping Duty Order on Certain Steel Threaded Rod from the People's Republic of China, 2013-2014</u>, at 1, A-570-932, POR: 4/1/2013–3/31/2014 (Dep't Commerce Nov. 3, 2015) ("<u>I&D Memo</u>"). During the review, however, Commerce found that Gem-Year had "failed to cooperate by not acting to the best of its ability," because it did not

provide Commerce with "full and complete answers" to its inquiries. Id. at 27. Commerce highlighted Gem-Year's inadequate information regarding various factors of production ("FOPs") and late disclosure that its affiliate, Jinn-Well Auto Parts (Zhejiang) Co. Ltd. ("Jinn-Well"), had likely produced in-scope merchandise.[1] Id. at 9–28.  Commerce claimed that to properly conduct a separate rate analysis it needed to examine not only Gem-Year's corporate structure, but also the operations of its affiliated manufacturers of in-scope merchandise–Jinn-Well and Gem-Duo. Id. at 27. Although Commerce apparently knew that both Gem-Duo and Jinn-Well existed, it was not made aware that Jinn-Well likely had produced in-scope merchandise until verification. Id. at 21–22, 26–27. Accordingly, Commerce stated that Gem-Year's separate rate information was "unreliable and incomplete" and had "deficiencies in Gem-Year's corporate structure and affiliation information," such that a separate rate was not merited. Id. at 27–28. Thus, Commerce applied "total" adverse facts available ("AFA") and "placed [Gem-Year] in the PRC-wide entity." Id. at 28.

Hubbell challenges this result and claims that Commerce improperly conflated Gem-Year's separate rate inquiry with the issue of whether Gem-Year supplied the necessary data needed to set such a rate. See Hubbell Br. at 13–16. It argues that any purported deficiencies must go "to the heart of . . . corporate ownership and control" for Commerce to deny a separate rate. Id. at 14. At base, Hubbell argues that "the record does not support a finding of state

---

[1] At the administrative level, Gem-Year disputed whether the merchandise was in fact within the scope of the AD duty order, see Case Brief of Gem-Year, C.R. 551, 14–16 (June 22, 2015) ("Gem-Year Case Brief"), [[

]]; see also I&D Memo at 21–22 (stating that the products are within scope and noting Gem-Year's objection). Hubbell "takes no position" on this matter, Hubbell Br. at 5 n. 3., so the court will assume for its purposes that the products fell within the scope of the AD duty order.

3

ownership or control." Id. at 16. Further, Hubbell argues that, although Commerce was not made aware that Jinn-Well produced potentially-subject merchandise, its status as Gem-Year's affiliate was clear from a timely-submitted organizational chart. Id. at 17–18.

According to the chart, Jinn-Well is a fully-owned subsidiary of Gem-Year and Chin-Champ Enterprise Co., Ltd., which in turn can both be traced back to the same four Taiwanese-national owners (members of the Tsai Family) and public shareholders. Id. at 18–20; Gem-Year Section A. Questionnaire Response, Ex. 10 "Investment Relation Chart of Gem-Year," C.R. 11 (Aug. 22, 2014) ("Gem-Year Org. Chart"). Because Commerce assessed government control of Gem-Year and the Tsai Family, and had received at least some of Jinn-Well's financial records, Hubbell argues that Commerce ignored significant evidence showing a lack of government control that entitled it to a separate rate. Hubbell Br. at 18–20. Hubbell also stresses that the Jinn-Well merchandise constituted a very small fraction of Gem-Year's exports and that there was no indication that this merchandise was exported to the United States. Id. at 17. Finally, Hubbell challenges Commerce's imposition of the PRC-wide rate resulting from an adverse inference, arguing that it is untethered to the record and punitive given Gem-Year's active participation in the review. Id. at 22–26.

Defendant United States ("the government") and Defendant-Intervenor Vulcan Threaded Products Inc. ("Vulcan") argue that applying the PRC-wide rate to Gem-Year based on an adverse inference is supported by substantial evidence and otherwise in accordance with law. Def.'s Resp. to Pl.'s Mot. for J. Upon the Agency R., Doc. No. 46 ("Def. Br."); Def.-Intervenor's Resp. to Pl.'s USCIT Rule 56.2 Mot. for J. on the Agency R., Doc. No. 45 ("Vulcan Br."). The government states that "this case presents unusual circumstances in which Commerce received some separate rate information and sought to verify that information, but discovered at

verification that the separate rate information was incomplete." Def. Br. at 13. Because Gem-Year omitted the information about Jinn-Well's production, Commerce determined that Gem-Year "failed to cooperate to the best of its ability," which in turn led Commerce to disregard all of Gem-Year's proffered information as unreliable. Id. at 14. The government disagrees with claims that the information necessary to evaluate government control of Jinn-Well was on the record, pointing out in its briefing before the Court missing information, such as business licenses and plans, and Commerce's inability to verify such information given the late notice.[2] Id. at 16–18. Accordingly, the government argues that Commerce was unable to assess "the Chinese government's involvement in Jinn-Well's business decisions, its purchases and price-setting, or the appointment of its management." Id. at 17.

The government claims that absent verification, it cannot validate Hubbell's assertions that the Jinn-Well merchandise was only a small fraction of relevant exports and may not have been shipped to the United States. Id. at 22–23. The government emphasizes that "Commerce did not assign Gem-Year an adverse facts available margin" (emphasis in original), but rather "as adverse facts available, Commerce rejected all of Gem-Year's separate rate information and included Gem-Year in the China-wide entity." Id. at 25. Vulcan largely agrees with the government. See Vulcan Br. at 11–32. It also stresses the validity of Commerce's rebuttable presumption of state control in non-market economies ("NME") and that those seeking a separate rate must prove lack of de jure and de facto control rather than Commerce proving control. See id. at 11–14.

---

[2] No specific categories of missing corporate structure information were mentioned in Commerce's determination.

In its reply, Hubbell essentially contends that if Commerce needed additional information to verify a lack of government control of Jinn-Well, then it should have requested it. See Pl.'s Reply Br. in Supp. of Mot. for J. on the Agency R. Pursuant to Rule 56.2, Doc. No. 50 ("Hubbell Reply Br."). Hubbell also claims that as all subject merchandise for this review was produced in 2009 and because Commerce previously found a lack of government control during the first administrative review covering 2008–2010, Commerce should have explained why the previous finding of independence fails to alter the outcome here. Hubbell Reply Br. at 8.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012). The court upholds Commerce's final results of an administrative review of an AD duty order unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

I. **Whether Gem-Year is Entitled to a Separate Rate**

   a. **Separate Rate Determination Framework**

Although the parties largely agree on the underlying facts, they deviate in their understanding of precisely why Commerce denied Gem-Year's separate rate application. Hubbell understands Commerce to have denied the separate rate application because of an arguably small amount of undisclosed Jinn-Well merchandise, which it claims is not enough to undermine Gem-Year's application. See Hubbell Reply Br. at 6. In contrast, the government understands Commerce to have made its decision not based on Jinn-Well's production of in-scope merchandise per se, but because it found that the failure to mention this production until the end of verification undermined the reliability of Gem-Year's entire separate rate application.

Def. Br. at 13–15. Although the latter understanding best comports with Commerce's reasoning in its issues and decision memo, see I&D Memo at 25–28, as detailed below, even under a more generous reading of Commerce's rationale, the resulting decision is not supported by substantial evidence.

The Court of Appeals for the Federal Circuit ("CAFC") has consistently upheld Commerce's use of a rebuttal presumption of state control such that entities in NMEs are assigned the state-wide AD duty rate unless they demonstrate eligibility for a separate rate.[3] See e.g., Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1310–11 (Fed. Cir. 2017); Changzhou Hawd Flooring Co., Ltd. v. United States, 848 F.3d 1006, 1009 (Fed. Cir. 2017); Michaels Stores, Inc. v. United States, 766 F.3d 1388, 1390 (Fed. Cir. 2014); Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). If an entity demonstrates a lack of de jure and de facto government control, Commerce will assign it a separate rate. AMS Assoc., Inc. v. United States, 719 F.3d 1376, 1379 (Fed. Cir. 2013). With regard to government control, the CAFC has stated that:

> The absence of de jure government control can be shown by reference to legislation and other governmental measures that suggest sufficient company legal freedom. The absence of de facto government control can be shown by evidence that an exporter sets its prices independently of the government and of other exporters, negotiates its own contracts, keeps the proceeds of its sales (taxation aside), and selects its management autonomously.

Id. (internal citations omitted); see also, Final Determination of Sales at Less than Fair Value: Sparklers from the People's Republic of China, A-570-804, 56 Fed. Reg. 20,588, 20,589 (Dep't Commerce May 6, 1991) ("Sparklers").[4]

---

[3] The state-wide rate is, in essence, an individual rate for an entire state entity. See 19 U.S.C. § 1673d(c)(1)(B)(i)(I-II).

[4] In that review, which Commerce references in this administrative review, Commerce stated:

Commerce evaluates an entity's separate status by requiring it to prove that it is wholly-foreign owned[5] or otherwise establish that it is independent through a separate rate application.[6] See I&D Memo at 26. If an entity shows that it is entitled to a separate rate, then Commerce typically estimates a dumping margin based on how much the normal value, as derived from the producer's FOPs valued in a surrogate market economy, exceeds the export price or constructed export price. See 19 U.S.C. § 1677(35); 19 U.S.C. § 1677b(c); I&D Memo at 45. As indicated, if an entity fails to establish separate rate status by not rebutting the presumption of state control, Commerce can place the entity within the PRC-wide entity. Additionally, Commerce has broad

---

> Evidence supporting, though not requiring, a finding of de jure absence of central control includes: (1) An absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; or (3) any other formal measures by the government decentralizing control of companies. De facto absence of central government control with respect to exports is based on two prerequisites: (1) Whether each exporter sets its own export prices independently of the government and other exporters; and (2) whether each exporter can keep the proceeds from its sales.

Sparklers at 20,589; see also I&D Memo at 25–26 (referencing the Sprinkler's test).

[5] According to Section A of Gem-Year's AD questionnaire response:

> Gem-Year was established on November 17, 1995, as a wholly foreign owned company in the PRC. Gem-Year made its initial public offering in January 2007 and has been listed and traded on the Shanghai Stock Exchange ever since. [[
>
> ]].

Gem-Year Section A Questionnaire Response, at 2, C.R. 11 (Aug. 22, 2014). Commerce, however, found that Gem-Year was not a wholly foreign-owned because it is a publicly-traded PRC company. I&D Memo at 26.

[6] Entities that have received a separate rate in the administrative review immediately prior to an administrative review at issue need only submit a separate rate certification stating that they continue to satisfy the requirements for such status. See Initiation Notice, 79 Fed. Reg. at 30,810.

discretion in choosing an AFA rate, which the rate applied to the China-wide entity is. It need only act reasonably in the light of the record, but this discretion is not boundless. See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). For instance, where application of the PRC-wide rate presumes government control, if a respondent proves an absence of control, Commerce "may not apply the PRC-wide rate as the AFA rate where AFA is warranted for sales and FOP data." Qingdao Taifa Grp. Co. v. United States, 637 F. Supp. 2d 1231, 1240 (CIT 2009).

The POR at issue in this administrative review is 2013-2014. As indicated, Hubbell asserts that the previous finding of lack of PRC control for 2009, the production year, should dictate the result here. Government control can arise, however, at other points in the exportation process, for instance, in price setting or contract negotiation. Thus, although this information is something that Commerce could have considered in deciding whether to grant Gem-Year's separate rate application, lack of consideration of this information is not dispositive.

b. **Late Notice of Jinn-Well's Production of In-Scope Merchandise**

Hubbell continually states that it disclosed Jinn-Well's status as an affiliate in a timely-submitted, organizational chart. Hubbell Reply Br. at 5–10; see also Gem-Year Org. Chart. Thus, it argues, Commerce is at fault for any failure to investigate Jinn-Well. The court is not persuaded. The chart contains numerous affiliates–some fully-owned by Gem-Year, some not– that, under Hubbell's logic, Commerce would have been required to investigate without any indication from Gem-Year that these affiliates had produced subject merchandise. See Gem-Year Org. Chart. Rather than engage in this potentially-lengthy undertaking, Commerce reasonably asked Gem-Year to identify those affiliates that produced subject merchandise and then set out to

investigate those affiliates. This is administratively practicable and saves all parties time and effort.

Nonetheless, the imposition of China's total AFA rate in response to Gem-Year's failure to timely reveal Jinn-Well's production of some small amount of subject merchandise appears unduly punitive or arbitrary given the extensive factual information that remained on the record.[7] See F.lli De Cecco, 216 F.3d at 1032 (holding that 19 U.S.C. § 1677e(b) does not sanction imposing "punitive, aberrational, or uncorroborated margins," but rather incentivizes cooperation). Commerce has not asserted that the remaining timely-submitted information was deficient regarding the question of government control, could not be verified, was incomplete, unduly difficult to assess, or that Gem-Year failed to act to the best of its ability in providing Commerce with government control information. Commerce instead stated, in general terms, that it "discovered numerous deficiencies that significantly impact[ed] the Department's dumping analysis and the separate rate inquiry in particular" such that it deemed "the separate rate information submitted by Gem-Year to be unreliable and incomplete, as a whole." I&D Memo at 26–27.

Commerce's claim that the Jinn-Well omission taints all of Gem-Year's submissions strains credulity. See Qingdao Taifa Grp. Co., Ltd. v. United States, 760 F. Supp. 2d 1379, 1384 (CIT 2010) (noting that when a respondent is less than honest it is proper to "treat internal documents about who is running [the respondent] with skepticism. Skepticism, however, does not mean total disregard"). Although omissions, lies, and non-cooperation have in some cases been enough to merit Commerce's choice to disregard all information, the discrepancy relied on

---

[7] While the exact amount has not been finally established, it seems clear that Jinn-Well was not a major producer. See Gem-Year Verification Report, A-570-932, C.R. 430, Exhibit XIII-C at 6 (Mar. 25, 2015).

here does not rise to the level present in such cases. See, e.g., Ad Hoc Shrimp Trade Action Comm. v. United States, 802 F.3d 1339, 1355–56 (Fed. Cir. 2015) (determining that substantial evidence supported Commerce's decision to place respondent in the PRC-wide entity given its repeated misrepresentations and concealment of a relationship with an illegal enterprise until Commerce placed on the record irrefutable evidence proving affiliation); AMS Assoc. Inc., 719 F.3d at 1380 (upholding Commerce's denial of separate rate status in a case where respondent removed confidential information, which resulted in a lack of information on the record needed to assess government control).

Further, Commerce did not discover the production discrepancy here on its own and confront Gem-Year, rather, two days after confirming previously-submitted questionnaire responses stating that Gem-Duo was the only affiliate that produced subject merchandise, Gem-Year officials revealed that Jinn-Well also produced some potentially relevant merchandise. See Verification of the Sales and Factors of Production Responses of Gem-Year Indus. Co., Ltd. and Gem-Duo Co., Ltd. in the Fifth Admin. Review of Certain Steel Threaded Rod from the PRC, A-570-932, C.R. 353, at 6 (Dep't Commerce Apr. 30, 2015) ("Verification Report"); compare with Ad Hoc Shrimp, 802 F.3d at 1356 (noting that the respondents in that case only admitted to an affiliation when confronted with unequivocal proof). Moreover, there is at least some indication that Gem-Year may not have understood the Jinn-Well products to be within the scope of the AD duty order and that these products were not sold in the United States. See Verification Report at 6; Gem-Year Case Brief at 14–16. Nonetheless, after this revelation, Commerce did ask for and seemingly received "a complete product listing identifying everything that Jinn-Well produced and sold to Gem-Year in 2009, and identifying all products that met the definition of the scope." Verification Report at 6.

This is not a case in which it appears that the omissions are so severe or central to the actual question at issue that they normally would prevent Commerce from determining whether Gem-Year is under state control. See Ad Hoc Shrimp, 802 F.3d at 1357 (rejection of separate rate status when the omissions went "to the heart of [the respondent's] ownership and control" and "cut across all aspects of the data.") (internal citations omitted). As the court has previously stated, a company's failure to provide information unrelated to establishing entitlement to a separate rate does not necessarily undermine submissions demonstrating an absence of government control. See Shenzhen Xinboda Indus. Co. v. United States, 180 F. Supp. 3d 1305, 1316–17 (CIT 2016) (holding that Commerce cannot find a respondent's separate rate information "tainted" on the basis of deficiencies in sales data as such data is unrelated to corporate ownership and control); Lifestyle Enter. Inc. v. United States, 768 F. Supp. 2d 1286, 1296 (CIT 2011) (holding that a respondent's failure in unrelated aspects of a review does not undermine its application for separate rate status); Shangdong Huarong Gen. Grp. Corp. v. United States, 27 C.I.T. 1568, 1594 (2003) (denying Commerce's assignment of a PRC-wide dumping margin where respondents presented "evidence of their entitlement to separate rates" when there was "no indication that any necessary information was missing or incomplete"). Here, the production data deficiencies do not relate to the threshold determination of government control, but rather impact Commerce's ability to set an accurate dumping rate. Although Commerce is free to disregard unverifiable information, it has notably not asserted that the information regarding government control submitted by Gem-Year is unverifiable. See AMS Assoc., Inc., 719 F.3d at 1380 (noting that 19 U.S.C. § 1677e(a)(2)(D) instructs Commerce to use facts otherwise available if the information submitted by an interested party cannot be

verified). Given the ample record here, Commerce's assertion that Gem-Year's submissions are materially deficient regarding corporate structure and affiliation are not supported.[8]

There appears to be sufficient evidence in the record to assess government control for Gem-Year, Gem-Duo, and Jinn-Well,[9] even if some data is missing, although at this point it is unclear what such missing data would be. On remand, Commerce should recognize Gem-Year as a separate rate entity or clearly specify what material gaps in information as to Jinn-Well's status remain and how that undermines Gem-Year's claim to separate rate status. The court stresses the need for Commerce to clearly bifurcate its decision on whether Gem-Year is entitled to a separate rate from any decision regarding its ability to calculate such a rate accurately.

## II.   Application of Adverse Facts Available in Calculating a Separate Rate for Gem-Year

On remand, should Commerce determine that Gem-Year is entitled to a separate rate, nothing in this opinion should be read to prevent Commerce from applying adverse inferences to facts otherwise available in calculating such a rate. Should Commerce need to utilize facts otherwise available, it should explain which information is missing, that is, what gap results from deficient

---

[8] The court notes that Commerce found that Gem-Year did not act to the best of its ability in providing information. These findings, however, seem to rest primarily, if not entirely, on failures to provide information necessary to set an accurate separate rate, rather than information necessary to establish a lack of government control. Thus, unless Commerce on remand explains how the information on government control is insufficient under 19 U.S.C. § 1677m(e), the court presumes it is adequate.

[9] In addition to the investment relation chart mentioned above, such evidence includes Gem-Year's financial statements from 2012 and 2013 [[
           ]], see Gem-Year's Section A Response, C.R. 10, at 36–37 (Aug. 22, 2014) [[
                                                                     ]] and Jinn-Well's business license, see Business License for Enterprise Activity, C.R. 66, at 76 [[
                                                                                                       ]], in addition to the information gathered during verification on Gem-Year and Gem-Duo.

reporting, and on what basis any adverse inference is being drawn with regard to such deficiency. See 19 U.S.C. § 1677e. The court notes that although Gem-Year's failure to disclose Jinn-Well's production of potentially-subject merchandise is insufficient on its own to apply AFA to the threshold inquiry regarding state control, this failure may be relevant to an application of AFA in arriving at a separate rate. See e.g., Qingdao Taifa Grp. Co., 637 F. Supp. 2d at 1239–41 (upholding Commerce's decision to disregard all of a plaintiff's submitted information to facts relevant to calculating the dumping margin given its active attempts to hide and alter sales data and other relevant documents).[10]

## CONCLUSION

For the foregoing reasons, this matter is remanded for Commerce to reevaluate Gem-Year's separate rate application in a manner consistent with this opinion and if it finds that Gem-Year is entitled to a separate rate, to determine one. The remand redetermination should be filed with the court within 60 days of the date of this order and all other parties shall have 30 days thereafter to file comments on the remand redetermination.

    /s/Jane A. Restani  
Jane A. Restani, Judge

Dated: February 27, 2019
      New York, New York

---

[10] In that case, the court held that the direct application of the PRC-wide rate as the AFA rate was not appropriate where a respondent had established a lack of government control, but that AFA could be applied "to all of the facts relevant in calculating [the respondent's] dumping margin." Qingdao Taifa Grp. Co., 637 F. Supp. 2d at 1240. The court does not suggest that Gem-Year's conduct was like that of Qingdao Taifa Group Co., merely that the choice of any particular rate based on application of AFA is not determined here.