Slip Op. 19-145

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HUBBELL POWER SYSTEMS, INC.**<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>**UNITED STATES,**<br><br>　　　　　　　　Defendant,<br><br>　　　and<br><br>**VULCAN THREADED PRODUCTS, INC.**<br><br>　　　　　　　　Defendant-Intervenor | Before: Jane A. Restani, Judge<br><br>Court No. 15-00312 |

## OPINION AND ORDER

Dated: November 20, 2019

[Commerce's Final Results of Redetermination Pursuant to Court Order are sustained]

　　　Kevin M. O'Brien, and Christine M. Streatfeild, Baker & McKenzie LLP, of Washington, DC, for the plaintiff Hubbell Power Systems, Inc.

　　　Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant United States. With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of Counsel on the brief was Natan P. L. Tubman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

　　　Roger B. Schagrin, Christopher T. Cloutier, and Paul W. Jameson, Schagrin Associates Washington, DC, for the defendant-intervenor Vulcan Threaded Products Inc.

　　　Restani, Judge: This matter concerns the Department of Commerce's ("Commerce") final results of the fifth administrative review of the antidumping ("AD") duty order on certain steel threaded rod from the People's Republic of China ("PRC"). See Certain Steel Threaded Rod from the People's Republic of China; Final Results Antidumping Duty Administrative Review;

2013-2014, 80 Fed. Reg. 69,938 (Dep't Commerce Nov. 12, 2015) ("Final Results"). Before the court are Commerce's Final Results of Remand Redetermination Pursuant to Court Remand, ECF No. 85 at 9 (Dep't Commerce May 20, 2019) ("Remand Results"). The Court sustains Commerce's Remand Results assigning Gem-Year Industrial Co. Ltd. ("Gem-Year") a separate rate of 206 percent.

## BACKGROUND

The court assumes familiarity with the facts of the case as set out in the court's previous opinion remanding the matter and recounts only the facts relevant for review of the Remand Results. Following an appeal from Hubbell Power Systems, Inc. ("Hubbell"), a U.S. importer of Chinese exporter Gem-Year products, the court remanded this matter to Commerce to reconsider Gem-Year's separate rate application. See Hubbell Power Sys., Inc. v. United States, Court No. 15-00312, Slip Op. 19-25 (CIT Feb. 27, 2019) ("Remand Order"). The Court held that despite Gem-Year's late disclosure of its affiliate, Jinn-Well Auto Parts (Zhejiang) Co. Ltd. ("Jinn-Well"), Commerce appeared to have sufficient record evidence to assess government control and determine whether Gem-Year was entitled to a separate rate. See Final Results.

On remand, Commerce assigned Gem-Year a separate rate. See Remand Results. Commerce found that record evidence showed both an absence of de jure and de facto government control over export activities. Id. at 7–9. Specifically, submissions by Gem-Year demonstrated that Jinn-Well was a wholly-owned subsidiary of Gem-Year, and as Commerce was able to verify Gem-Year's separate rate information showing an absence of government control, Commerce granted Gem-Year a separate rate. Id.

In assessing Gem-Year's dumping margin, Commerce found that Gem-Year had failed to adequately respond to Commerce's initial questionnaire and six supplemental questionnaires,

failed to report several factors of production ("FOP") for its affiliate Gem-Duo, failed to report Gem-Year's use of oxalic acid and lubricant as FOPs and was "unprepared to substantiate the responses it had provided."[1] Remand Results at 10–11; see also Decision Memorandum for Preliminary Results of Fifth Antidumping Duty Administrative Review: Certain Steel Threaded Rod from the People's Republic of China, A-570-032, POR: 04/01/13-03/31/14 at 8–14 (Dep't Commerce Apr. 30, 2015) ("Prelim I & D Memo"); Issues and Decision Memorandum for the Final Results of the Fifth Administrative Review of the Antidumping Duty Order on Certain Steel Threaded Rod from the People's Republic of China, A-570-032, POR: 04/01/13-03/31/14 at 9–23 (Dep't Commerce Nov. 3, 2015) ("I & D Memo"); Verification of the Sales and Factors of Production Responses of Gem-Year, A-570-932, at 2–3, 12–26 (Dep't Commerce April 30, 2015) ("Verification Report"). Commerce was unable to verify many of Gem-Year's reported FOPs and additionally "identified further discrepancies relating to the date of sales reporting, by-product offset reporting, and a purported returned sale that was not disclosed until verification." Remand Results at 10–11.

---

[1] As noted in the Prelim. I & D Memo, Gem-Year submitted a questionnaire response reporting FOPs as if the merchandise sold during the period of review was produced in that time period, when it was in fact produced in 2008 and 2009, despite explicit instructions from Commerce not to report in this fashion. This discrepancy resulted in Commerce issuing several supplementary requests for additional information from the "period comprising the majority of the production." Prelim. I & D Memo, at 8 (citing Gem-Year's Sections C & D Questionnaire Response (Sep. 5, 2014)). Gem-Year also initially failed to report the FOPs for its affiliated-producer Gem-Duo and ultimately reported the "FOPs and U.S. sales information for only a portion of the finished product." Id. Additionally, Gem-Year failed to report numerous FOPs and, upon onsite verification, officials witnessed the consumption of several unreported materials used in the production process. See id., at 10–11. Gem-Year also failed to disclose its affiliate, Jinn-Well, which it admitted only at verification produced in-scope merchandise, resulting in Commerce's inability to obtain and verify Jinn-Well's FOPs. Id. At verification, Commerce claims that both Gem-Year and Gem-Duo were unprepared, which resulted in Commerce's inability "to verify and substantiate the majority of the FOPs." Id., at 14.

Because of the missing, unverifiable, and unreliable data, Commerce found it necessary to rely on facts otherwise available. See id. at 11 (citing 19 U.S.C. § 1677e(a)(1)). Commerce, however, found that the gaps created by Gem-Year's failure to cooperate to the best of its ability were central to Commerce's dumping margin determination such that Commerce could not "apply 'partial' facts available" and so relied "on total facts otherwise available." Id. at 13–14. Accordingly, Commerce found the application of an adverse inference to facts available warranted given Gem-Year's failure to cooperate. Id. (citing 19 U.S.C. § 1677e(b)). Commerce then selected the highest dumping margin from the proceeding and assigned Gem-Year "the rate of 206 percent, the highest rate from any segment of these proceedings, as corroborated and applied to the China-wide entity in the [less than fair value] investigation." Id. at 16 (citing 19 U.S.C. § 1677e(d)).

Hubbell agrees that Gem-Year qualifies for a separate rate, but disputes the assignment of what it describes as the China-wide entity rate. See Pl.'s Comments on Remand Redetermination, ECF No. 87 at 3–10 (June 19, 2019) ("Hubbell Br."). Hubbell argues that the China-wide entity rate cannot serve as an "AFA" rate as that rate is predicated on a finding of state control. Id. at 4–5. Hubbell does not meaningfully dispute Commerce's finding that Gem-Year's submissions were deficient or that Commerce had significant issues with verification, but only states that "Gem-Year's conduct does not rise to the level of that of numerous respondents for which courts have refused to permit the application of the China-wide rate." Hubbell Br. at 2, 8. It further asserts that Commerce was required to corroborate the rate imposed in accordance with 19 U.S.C. § 1677e(c). Id. at 5–10. Hubbell states that Commerce should have applied the 55.16 percent deposit rate as sufficiently "adverse in the context of this review without rising to the level of grossly disproportionate or plainly punitive." Id. at 6. Finally, Hubbell argues that

Commerce failed to "address the impact of the findings in the first administrative review on these results – when the periods of review overlapped," and where Gem-Year received a 55.16 percent rate. Id. at 9–10.

The government claims that Hubbell misunderstands the remand redetermination and relies on "cases that required Commerce to consider a respondent's commercial reality when calculating an AFA rate which is a requirement that has been abrogated by statute." Def.'s Resp. to Comments on the Remand Results, ECF No. at 7 (Aug. 22, 2019) ("Gov. Br."). The government further rejects Hubbell's contention that it was required to corroborate the 206 percent rate, as Commerce's decision falls within the exception to the general rule that the agency should "to the extent practicable" corroborate secondary information. See id. at 8–11 (citing 19 U.S.C. § 1677e(c)(2)).

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2) (2012). The court will uphold Commerce's remand redetermination unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.  Relying on Facts Available with an Adverse Inference

If Commerce determines that there is a gap in the record, it may use facts otherwise available in rendering a decision. See 19 U.S.C. § 1677e(a). If a party fails to cooperate "to the best of its ability," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). A party fails to cooperate to the best of its ability when it does not "conduct prompt, careful, and comprehensive

investigations of all relevant records that refer or relate to the imports in question to the full extent of [its] ability to do so." Nippon Steel Corp. v. United States, 337 F. 3d 1373,1382 (Fed. Cir. 2003); see also 19 U.S.C. § 1677e(a)(2). Further, "intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate." Id. at 1383; see also Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citation omitted).

      Commerce repeatedly asked for information regarding FOPs, affiliates, and sales information, only to be repeatedly stymied and misled by Gem-Year. Although at the administrative level Gem-Year argued that it made extraordinary efforts to cooperate, disputed some of Commerce's claims about Gem-Year's omissions and non-cooperation, and claimed that many mistakes were immaterial, Hubbell does not meaningfully make those arguments now. See Steel Threaded Rod from China: Case Brief of Gem-Year, ECF No. 78-31 (June 22, 2015). Gem-Year undoubtedly submitted a great deal of documentation to Commerce, but quantity is not a definitive indicator of cooperation. Despite its responses, Commerce found that Gem-Year's submissions contained several errors and omissions, that it failed to disclose affiliated producers of in-scope merchandise, that numerous FOPs were unreported, and other deficiencies. See Remand Results, at 10–11.

      Because of these deficiencies, Commerce reasonably found that the whole of Gem-Year's submissions were unreliable, incomplete, and unverifiable. See id. at 2, 6–7. Gem-Year's failure to cooperate caused an informational gap in the record that allowed Commerce to resort to facts available in assessing a dumping margin. See 19 U.S.C. § 1677e(a). Further, Gem-Year's failure to act to the best of its ability allowed Commerce to apply adverse inferences to facts available, as Gem-Year provided false and inaccurate information that evinced a lack of care or perhaps even deliberate concealment. See 19 U.S.C. § 1677e(b)(1); see also Nippon Steel, 337 F. 3d at

1383; Essar Steel, 678 F.3d at 1276.

## II.　Selection of the Highest Rate on Record

Hubbell argues that Commerce's selection of a rate equal to the China-wide rate is unsupported by record evidence and not in accordance with the law as that rate is predicated upon a respondent's inclusion in the Chinese entity. Hubbell Br. at 6. If Commerce's reasoning is not arbitrary and capricious, the court will sustain its chosen rate. See Deosen Biochem. Ltd. v. United States, 301 F. Supp. 3d 1372, 1380 (CIT 2018) (citing Changzhou Wujin Fine Chem. Factory Co. v. United States, 701 F. Supp. 3d 1367, 1377 (Fed Cir. 2012)).

As it is authorized to do, Commerce applied the highest rate from any segment in the proceeding, the China-wide rate, to Gem-Year based on application of facts available with an adverse inference. Remand Results at 16; see also 19 U.S.C. § 1677e(d)(2) (stating that it is within Commerce's discretion to apply the highest rate). In a recent case, the court explained that although Commerce may resort to the highest rate on record, it must conduct a situation-specific analysis and explain that decision. See POSCO v. United States, 296 F. Supp. 3d 1320, 1349–50 (CIT 2018).

Here, Commerce did adequately explain its rationale for choosing the 206 percent rate. In response to Hubbell's comments on the Remand Redetermination, Commerce explained that although Gem-Year had in an earlier review been assigned the 55.16 percent rate, Commerce chose not to assign that rate in this proceeding given Gem-Year's failure to cooperate in the review. Remand Results at 19. Commerce found that the higher rate was required to ensure that Hubbell, as an uncooperating party, did not "obtain a more favorable result by failing to

cooperate than if it had fully cooperated." Id.[2] Commerce additionally noted that although Hubbell had been assigned the 55.16 percent rate in the first administrative review of the order, after failing to cooperate in subsequent administrative reviews, Hubbell was assigned a rate of 206 percent. Id. at 18–19.

Commerce was reasonable in disregarding the other rate on the record given this rationale. Although RMB was assigned a rate of 39.42 percent, that party cooperated and submitted documentation that allowed Commerce to calculate that rate. Assigning Hubbell that rate would disincentivize cooperation by allowing Hubbell to benefit from another party's cooperation despite its non-cooperation. See, PAM, S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009) (noting that "Commerce's discretion in applying an AFA margin is particularly great when a respondent is uncooperative"); see also Viet I-Mei Frozen Foods Co., Ltd. v. United States, 839 F.3d 1099, 1110 (Fed. Cir. 2016) (upholding the imposition of the Vietnam-wide rate despite respondent's eligibility for a separate rate and holding that assigning a non-cooperating respondent a lower rate than a cooperating respondent "would only incentivize gamesmanship and undermine the purpose of the AFA provisions"); Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), H. R. REP. No. 103–316, vol. 1, at 870 (1994) as reprinted in 1994 U.S.C.C.A.N. 4040, 4199 (allowing Commerce apply adverse inferences to facts available "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully"). Accordingly, Commerce reasonably found the 55.16 percent rate insufficient to induce cooperation. Remand Results at 19.

---

[2] The only other rate computed for this administrative review was for a cooperating party, IFI & Morgan Ltd. and RMB Fasteners Ltd. ("RMB"), which was assigned a rate of 39.42 percent based on its submission of relevant sale and FOP data. See Final Results 80 Fed. Reg. at 69,939.

### III.    Corroboration

Hubbell's brief claims that it is legal error for Commerce to not corroborate the rate assigned to Gem-Year. See Hubbell Br. at 5–10. This argument fails because the statute clearly authorizes Commerce to assign a rate from a previous segment of the same proceeding without corroborating the margin. See 19 U.S.C. § 1677e(c)(2) (Commerce "shall not be required to corroborate any dumping margin or countervailing duty applied in a separate segment of the same proceeding").  The 206 percent rate assigned to Gem-Year derives from the petition in the less-than-fair-value investigation and was corroborated at that time. See Certain Threaded Rod from the People's Republic of China: Final Determination of Sales at Less than Fair Value, 74 Fed. Reg. 8,907, 8,910 (Feb. 27, 2009) (finding the 206 percent rate probative "because it [was] in the range of margins calculated for the [respondent]"). Commerce applied this rate in a separate segment of these proceedings and thus had no obligation to corroborate the rate.[3]

### CONCLUSION

For the foregoing reasons Commerce's Remand Redetermination is sustained.

  /s/Jane A. Restani  
Jane A. Restani, Judge

Dated: November 20, 2019
     New York, New York

---

[3] Hubbell's argument and citation to pre-Trade Preferences Extension Act ("TPEA") cases indicate that it misunderstands the current statutory scheme concerning the application of facts available with an adverse inference. See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27 § 502, 129 Stat. 362, 383-84 codified as amended 19 U.S.C. § 1677e (2015). Although cases prior to the TPEA required Commerce to demonstrate a relationship between an AFA rate and a respondent's actual estimated dumping margin, that is no longer the case. Commerce no longer has to "demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party." 19 U.S.C. § 1677e(d)(3)(B). Thus, Hubbell's argument that Commerce needed to explicitly account for the fact that the majority of the subject merchandise it produced during this administrative review was produced in 2009 when it was subject to the 55.16 percent rate is of no moment.